**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **COLE BENOIT**, individually, and on behalf of all others similarly situated, | : FIRST AMENDED COLLECTIVE AND : CLASS ACTION : |
| Plaintiffs, | : JURY TRIAL DEMANDED : |
| v. | : No.: 1:24-cv-11627 : Hon. Jeremy C. Daniel |
| **HINDUJA GLOBAL SOLUTIONS, LLC and HGS (USA), LLC.** | : : Magistrate Judge Hon. Gabriel A. Fuentes |
| Defendants. | : |

**FIRST AMENDED COLLECTIVE AND CLASS ACTION
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Cole Benoit, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through his attorneys, hereby brings this First Amended Collective and Class Action Complaint against Defendant Hinduja Global Solutions, LLC and HGS (USA), LLC. (collectively "Defendants"), and states as follows:

**INTRODUCTION**

1.      This is a collective and class action that arises out of Defendants' systemic failure to compensate their employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* and common law.

2.      Plaintiff and the putative collective members consist of current and former call center agents or similar positions ("Agents"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all pre-, mid-, and post-shift off-the-clock work.

3.      Regardless of the specific job title, all Agents: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if

not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendants' customers.

4. Defendants required their Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), would result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6. The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only forty (40) hours per week, worked over forty (40) hours per week without the required overtime premium for all time worked over forty (40) hours.

7. Defendants, through their managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendants suffered or permitted, and in fact trained and required, their Agents to complete this unpaid work.

8. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendants' refusal to pay for work "from the beginning of the first

principal activity of the workday to the end of the last principal activity of the workday." *See* **ECF No. 1-1**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*

9.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id.*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10.     Defendants' practice of failing to compensate their Agents for all hours worked violated the Agents' rights under the FLSA.

11.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly call center agents who worked for Defendants at any time during the past three years.*

12.     Defendants are liable for their failure to pay their Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

13.     Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre-, mid, and post-shift work performed for Defendants, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16.    Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 20 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17.    Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees, including Plaintiff and the Agents, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

18.    The Court has personal jurisdiction over Defendants because Defendants conduct business within the state of Illinois and maintain principal places of business in the state of Illinois.

19.    Venue is proper in the Northern District of Illinois Eastern Division pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendants conduct business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

20.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

21.    Plaintiff Cole Benoit is a resident of Knoxville, Illinois.  Plaintiff has worked for Defendants as a remote Agent from approximately April 2022 to the present.  Defendants compensated Plaintiff for his services as an Agent in the form of an hourly wage, most recently at the rate of $14.75 per hour. Plaintiff Benoit signed a consent form to join this collective action lawsuit. **ECF No. 1-2**.

22.    Additional putative Collective members were or are employed by Defendants as

4

Agents in Illinois and potentially other states during the past three years and their consent forms will also be filed in this case.

23. Defendant Hinduja Global Solutions, LLC. is a global leader in business process management serving more than 900 of the world's top brands.

24. Defendant HGS (USA), LLC provides customer contact centers and business process outsourcing services through call centers, and is managed by Defendant Hinduja Global Solutions, LLC.

25. Defendants are foreign limited liability companies organized under the State of Delaware with their corporate headquarters located at 4320 Winfield Road, Suite 215, Warrenville, Illinois 60555.

26. Defendants' registered agent is Cogency Global Inc. located at 600 South Second Street, Suite 404, Springfield, Illinois 62704.

27. At all times relevant to this Complaint, Defendants were a common enterprise and joint "employers" of Plaintiff and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

28. Upon information and belief, Defendants employed hundreds of Agents – including Plaintiff – within the past three years and across the United States to assist their customers with their customer service needs.

## GENERAL ALLEGATIONS

29. Throughout their employment with Defendants, Plaintiff and other Agents were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

30. Defendants employ hundreds of Agents who work remotely from their homes,

5

providing customer service and support to Defendants' customers throughout the United States.

31.    Defendants have employed hundreds of agents over the past three years as part of their remote work to handle customer phone calls concerning various issues.

32.    Defendants compensated their Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

33.    Upon information and belief, Defendants maintain documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

34.    Defendants' Agent position typically had schedules that require employees to work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek.  However, in some workweeks, Defendants' Agents work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendants' Agents strictly adhere to Defendants' baseline forty (40) hour schedule, the Agent schedule results in Agents working overtime on a weekly basis.

35.    Throughout their employment with Defendants, Plaintiff and the other Agents' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

36.    Once hired, Defendants provide all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendants' policies related to each topic. The training Defendants' Agents receive is substantially, if not entirely, the same and all Agents are subject to the same disciplinary policies.

37. Plaintiff and other similarly situated Agents are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendants' Agents to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendants force their Agents to perform the boot-up and login process before clocking into Defendants' timekeeping system.

38. All of Defendants' Agents use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the Agents' work, and they cannot perform their jobs without them.

39. Once training is completed and to perform their job duties, Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Agents are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

40. The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other Agents spend booting up, logging in, and logging off their computers directly benefits Defendants and is integral and indispensable to the Agents' job responsibilities.

41. Despite knowing Plaintiff and all other Agents perform this pre-, mid-, and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42. Defendants possess, control, and/or have access to information and electronic data

indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

43.     Because Defendants require their Agents to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Agents spend working for Defendants. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

44.     Despite its ability to track the amount of time Plaintiff and other Agents spend in connection with the pre-, mid-, and post-shift boot-up, login, and log-out processes, Defendants failed to pay Plaintiff and other Agents for the off-the-clock work they performed each shift, thus breaching their contracts with its Agents.

45.     Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid.

46.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices is a deprivation of straight-time wages, in breach of Defendants' contracts with its Agents.

**A.  <u>Pre-Shift Off-the-Clock Work</u>**

47.     Like most call centers, Defendants maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

48.     Defendants used their attendance/schedule adherence policies to require their Agents to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

8

49.     Throughout their employment with Defendants, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

50.     Upon arriving to their home computer, Defendants' Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

51.     The pre-shift boot-up and login process generally consisted of the following steps:

a.    The Agents turned on or woke up their computer;

b.    The Agents then opened a VPN application and logged in using a username and password;

c.    The Agents then logged in to Windows 10 operating system;

d.    The Agents then opened the Office Mobility application;

e.    The Agents then opened the Alvaria application;

f.    The Agents then opened the BOLT application;

g.    The Agents then opened the Icoms application and logged in using 2-factor authentication by entering a code received on their phones;

h.    The Agents then opened the Simon application;

i.    The Agents then opened the Agent X application;

j.    The Agents then opened the Microsoft Teams application;

k.    The Agents then opened Microsoft Outlook application.

l.    Once all applications to be "call ready" were opened, agents would then change their status in the Alvaria application and their time clock would start.

52.     The boot-up and login process described above took substantial time on a daily basis, ranging from ten (10) to twenty (20) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.[1]

53.     Agents were required to complete each of these tasks prior to "punching in," as Agents could not be "phone ready" until these tasks were complete.

54.     Defendants' Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for at least ten (10) to twenty (20) minutes per shift (or more) before each shift for which they were never compensated.

55.     If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

56.     Because Defendants' Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

57.     Defendants had express and constructive knowledge that their Agents began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

58.     Defendants' Agents are not compensated for any of this time because Defendants prohibit Agents from clocking into their timekeeping software before the start of their scheduled

---

[1] Defendants upgraded their computer systems in or around April 2024 with better processors and increased RAM capacity. This upgrade has reduced, but not eliminated, the time Agents spend conducting pre-shift off-the-clock work.

shift.

59.      The pre-shift off-the-clock work performed by Agents directly benefits Defendants and is integral and indispensable to their job duties and responsibilities as Agents.

**B. <u>Mid-Shift Off-the-Clock Work</u>**

60.      Defendants provided their Agents with a scheduled thirty (30) minute unpaid meal period during each work shift.

61.      However, Defendants also required their Agents to perform off-the-clock work during these unpaid meal periods, including returning from the thirty (30) minute meal period approximately three (3) to five (5) minutes early in order to have enough time to log back in to Defendants' programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

62.      According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (**ECF No. 1-1**, Fact Sheet #64 at p. 2).

63. The mid-shift off-the-clock time worked by Defendant's Agents directly benefited Defendant and the process was an integral and indispensable part of the Agents' job responsibilities.

64. Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

65. Defendant had express and constructive knowledge that its Agents took unpaid meal

periods and that its Agents also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and "clocked in" on time for their shifts to resume.

66.     Despite having express and constructive knowledge of its Agents' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

**C.  Post-Shift Off-the-Clock Work**

67.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Agents are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

68. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five (5) to ten (10) minutes per shift.

69. Defendant's Agents are also not paid for their post-shift off-the-clock work.

70. The post-shift off-the-clock work Plaintiff and other Agents perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the- clock work are integral and indispensable to their job duties and responsibilities as Agents.

**D.  Defendants Benefitted from the Uncompensated Off-the-Clock Work**

71. At all relevant times, Defendants have required and directly benefited from the off-the-clock work performed by Plaintiff and all other Agents in connection with the pre-, mid, and post-shift activities described above.

72.     At all relevant times, Defendants have controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

12

73.     At all relevant times, Defendants have been able to track the amount of time Plaintiff and all other Agents spend in connection with pre-, mid, and post-shift activities; however, Defendants have failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

74.     At all relevant times Plaintiff and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

75.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the other Agents in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

76.     Defendants expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendants' timekeeping system.

77.     Defendants instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to twenty (20) minutes per day.

78.     Additionally, Plaintiff and all other Agents would have to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of three (3) to five (5) minutes per day.

79.     Similarly, at the end of the shift, Defendants instructed Agents to clock out before closing all work applications and systems to make sure they are "clocked out" the moment they stop fielding calls, which takes them in the range of five (5) to ten (10) minutes per day.

80.     At all relevant times, Defendants' policies and practices deprived Plaintiff and the Agents of wages owed for off-the-clock pre-, mid-, and post-shift activities they performed.

Because Defendants' Agents typically worked forty (40) hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

81. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

82. Defendants have known or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock pre-, mid-, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they have acted in good faith.

83. Despite knowing Agents performed off-the-clock work before, during, and after their shifts, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

84. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

85. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former hourly call center agents who worked for Defendants at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

86. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

87.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

88.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which they are due both overtime gap time and overtime.

89.     Defendants assign and/or are aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

90.     Upon information and belief, Defendants utilize a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

91.     As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

   b.  Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

   c.  Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants; and

   d.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre-shift boot-up process;

the mid-shift boot-up process; and the time spent post-shift closing all applications, networks, and programs, and shutting down their computers.

92.     Defendants are aware or should be aware that federal law required them to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

93.     Defendants' unlawful conduct has been and continues to be widespread, repeated, and consistent.

94.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

95.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre-, mid-, and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

96.     There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

97.     Plaintiff estimates the FLSA Collective, including both current and former Agents over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

98.     All of the estimations discussed herein will be refined after class discovery is

completed.

## **RULE 23 STATE LAW CLASS ACTION ALLEGATIONS**

99.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf

of himself and on behalf of:

> *All current and former hourly call center Agents who worked for Defendants at*
> *any location in Illinois during the applicable statutory period.*

(the "Illinois Class"). Plaintiff reserves the right to amend this definition if necessary.

100.    The members of the Rule 23 Illinois Class are so numerous that joinder of all

members in this case would be impractical. Plaintiff reasonably estimates that there are dozens, if

not hundreds, of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy

to identify from Defendants' computer systems and electronic payroll and personnel records.

101.    There is a well-defined community of interests among Rule 23 Illinois Class

members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Illinois Class. These common legal and factual

questions, include, but are not limited to, the following:

> a.  Whether the pre-, mid-, and post-shift time Rule 23 Illinois Class members spend
>     on startup and login activities each shift is compensable;
>
> b.  Whether Defendants' non-payment of wages for all compensable time violated the
>     Illinois Minimum Wage Law ("IMWL") and/or the Illinois Wage Payment and
>     Collection Act ("IWPCA"); and
>
> c.  Whether Defendants' should be required to pay compensatory damages, attorneys'
>     fees, penalties, costs, and interest for violating the state laws, constitutions, and
>     wage acts applicable to the members of the Rule 23 Illinois Class.

102.   Plaintiff's claims are typical of those of the Rule 23 Illinois Class members in that

he and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result

of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from

the same pay policies, practices, promises, and course of conduct as all other Rule 23 Illinois Class

members' claims and their legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

103.    Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class members.

104.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

105.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

106.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

107.    Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

108.    Plaintiff brings this action pursuant to Fed. Civ. P. 23(b)(2) and (b)(3) on behalf

of himself and on behalf of:

*All current and former hourly call center Agents who worked for Defendants at any time during the applicable statutory period.*

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

109.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

110.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-, mid-, and post-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b.    Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

c.    Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

111.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

112.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

113.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

114.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

115.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

116.    Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

117.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

118.    At all times relevant to this action, Defendants were employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

119.    Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120.    At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121.    Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

122.    Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

123.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

124.    At all times relevant to this action, Defendants required Plaintiff and the proposed Collective members to regularly perform ten (10) to twenty (20) minutes or more of pre-shift computer boot-up and login time, three (3) to five (5) minutes of mid-shift computer login, and five (5) to ten (10) minutes of post-shift log-out and shutdown time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

125.    All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendants, but was not.

126.     In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

127.     In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated pre-, mid-, and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

128.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for their Agents to complete the pre-, mid-, and post-shift boot-up , log-in, and log-out processes, and Defendants could have properly compensated Plaintiff and the proposed Collective members for the boot-up , login, and log-out work they performed, but did not.

129.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 ILLINOIS CLASS ACTION**
**VIOLATIONS OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),**
**§§ 820 ILCS 105/1, et seq. AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT**
**("IWPCA"), §§ ILCS 115/1, et seq.**

130.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

131.     At all times relevant to the action, Defendants were employers covered by the mandates of the IMWL, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. See §§ 820 ILCS 105/3(c)-(d).

22

132.    The IMWL, §§ 820 ILCS 105/1, *et. seq.* requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 per week. See §§ 820 ILCS 105/4; 820 ILCS 105/4a.

133.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

134.    The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." See §§ 820 ILCS 115/1. Plaintiff and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

135.    Under § 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

136.    Under § 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

137.    As discussed herein, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiffs and the Rule 23 Illinois Class members performed on Defendants' behalf.

138. For example, Defendant offered to compensate Plaintiff at a minimum of $13.00 per hour, plus any overtime pay required by applicable law, if he agreed to perform services for Defendant as an agent. Plaintiff accepted Defendants' offer and performed under the contract by fulfilling his duties as an agent, which included, but was not limited to, the pre-, mid-, and post-shift work activities required of him, in reliance on the offer.

139. Evidence of this contract includes Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for agent's work, which Plaintiff accepted and performed, including the unpaid pre-, mid- and post-shift work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

140. Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $13.00 per hour within the applicable period, in addition to applicable overtime premiums.

141. Plaintiff and every other Rule 23 Illinois Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

142. Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

143. Plaintiff and the Rule 23 Illinois Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendants failed to include the

compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class.

144. Section 820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that Defendants unilaterally altered time records to exclude the pre-, mid- , and post-shift activities discussed herein, Defendant violated 115/9 of the IWPCA.

145. Additionally, § 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

146. Defendants violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint, and for failing to provide Plaintiff and the Rule 23 Illinois Class with accurate wage statements reflecting all hours worked each workday and each workweek.

147. As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

## COUNT III
### (On Behalf of the Rule 23 Nationwide Class)
### BREACH OF CONTRACT

148. Plaintiff re-alleges and incorporates all previous paragraphs herein.

25

149.     Defendants had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendants.

150.     Plaintiff and the Rule 23 Nationwide Class earned pre-established hourly rates.

151.     Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendants' contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-, mid-, and post-shift work activities, described herein.

152.     By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendants breached their contracts with Plaintiff and the Rule 23 Nationwide Class.

153.     Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendants paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

154.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

155.     As a direct and proximate result of Defendants' contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT IV**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

26

156.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

157.    The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

158.    At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

159.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

160.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

161.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

162.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

163.    Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

164.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

165. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cole Benoit, on behalf of himself and on behalf of the putative FLSA Collective, the Rule 23 Nationwide Class, and the Rule 23 Illinois class, requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Certifying this action as a class action (for the Rule 23 Nationwide Class and Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's IMWL and IWPCA claim (Count II) and his common law claims (Counts III and IV);

d. Designating Plaintiff Cole Benoit as the Representative of the FLSA Collective action and the Rule 23 Nationwide Class and Rule 23 Illinois Class, and undersigned counsel as Class/Collective counsel for the same;

e. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants' violations of the FLSA were willful;

g. Declaring Defendants violated the IMWL and IWPCA for their failure to pay Plaintiff and the Rule 23 Illinois Class for the off-the-clock work discussed herein;

h. Declaring Defendants breached their contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

i.    Declaring Defendants were unjustly enriched through their failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

j.    Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendants and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

k.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

l.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 28, 2025

Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops
Thomas V. Nafziger
(*pro hac vice application forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: kstoops@sommerspc.com
Email: tnafziger@sommerspc.com

Jonathan Melmed (*will petition for admission*)
Meghan Higday
Melmed Law Group, P.C.
1801 Century Park E., Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
Email: mh@melmedlaw.com
Email: jm@melmedlaw.com

29

*Attorneys for Plaintiff, the FLSA Collective,*
*and the Putative Class*

## CERTIFICATE OF SERVICE

I certify that on February 28, 2025, this document was filed through the CM/ECF system

and will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing.

/s/ Kevin J. Stoops
Kevin J. Stoops
February 28, 2025